IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| FYFE CO., LLC, et al. | : | |
| | : | |
| v. | : | Civil No. CCB-13-176 |
| | : | |
| STRUCTURAL GROUP, LLC, et al. | : | |

### MEMORANDUM

Now pending before the court is a motion to dismiss for lack of jurisdiction and failure to state a claim filed by defendants Jason Alexander, Mark Geraghty, Anna Pridmore, and Shaun Loeding (the "individual defendants") against plaintiffs Fyfe Co., LLC, Fibrwrap Construction Services, Inc., and Fibrwrap Construction Services USA, Inc. (the "plaintiffs"). The plaintiffs are suing the individual defendants and Structural Group, a Maryland corporation, alleging breach of contract and tort claims arising out of the individual defendants' resignation from Fyfe Co./Fibrwrap to join Structural Group, a competitor. For the reasons stated below, the motion to dismiss will be granted.

### BACKGROUND

Fyfe Co. manufactures construction strengthening system products, particularly Fiber Reinforced Polymer ("FRP") systems, used for strengthening, repair, and restoration of masonry, concrete, steel, and wooden surfaces. Fibrwrap Construction Services, Inc., and Fibrwrap Construction Services USA, Inc. engage in concrete repairs and installation and construction of FRP composite materials. All three entities are incorporated under the laws of Delaware and headquartered in Missouri. On January 16, 2013, the plaintiffs filed a complaint against Structural Group, a Maryland corporation engaged in specialty construction, repair, and

1

maintenance services, with whom Fyfe Co. had entered into a Private Label Agreement (PLA). The agreement gave Structural Group the right to purchase Fyfe Co.'s patented, trademarked products for re-branding and sale provided that Structural Group agreed not to compete with Fyfe Co. The complaint also named as individual defendants four former executives of Fyfe Co. and/or Fibrwrap: Jason Alexander, Mark Geraghty, and Anna Pridmore, residents of California; and Shaun Loeding, a resident of New York. Pursuant to an executive employment agreement (EEA), Defendant Alexander was subject to covenants not to compete, disclose or use confidential information, or solicit employees to leave the plaintiffs' employ.[1] The other three individual defendants were subject to employment agreements containing covenants not to disclose, use confidential information, or solicit.

The plaintiffs allege that in the fall of 2012, the individual defendants engaged in discussions with Structural Group regarding employment and subsequently began copying confidential information, concealing their actions by deleting files and running file cleaning software on their company-issued computers. In late October 2012, Structural Group purchased $2.1 million of product from Fyfe Co., which the plaintiffs claim Structural Group intended to "hoard" to compete with Fyfe Co. once the individual defendants began working for Structural Group. In December 2012, all four individual defendants resigned from Fyfe Co./Fibrwrap and accepted employment with Structural Group. They did not, however, move to Maryland, nor is it alleged their work for Structural Group will be performed in Maryland.

---

[1] The covenant not to compete provides: "During the Term of Executive's employment with Employer and for (2) two years from the termination of this Agreement (the "Restricted Period"), Executive agrees that Executive shall not, directly or indirectly, (i) in any manner engage in any business similar to or competing with the Business (as defined below) or (ii) participate as a stockholder, member, partner, agent, or representative or other independent contractor or, or have any direct or indirect financial interest in, any enterprise that is engaged, or to the knowledge of Executive, plans to engage, in any business (as defined by the description in the Purchase Agreement) competing with the Business anywhere in the Territory, except passive investment in a publicly traded company of less than 1% of such company's outstanding equity securities." ECF No. 2, Ex. 3, at 7.

In their complaint, the plaintiffs claim breach of contract (Count I) and breach of fiduciary duty (Count II) against Alexander; breach of contract against the other three individual defendants (Count V); and misappropriation of trade secrets (Count III) and breach of the duty of loyalty (Count IV) against all four individual defendants. The plaintiffs also claim breach of contract against Structural Group (Count VI), and total interference with contract relations with the individual defendants against Structural Group and Alexander (Count IX). As to all defendants, the plaintiffs allege unfair business practices (Count VII), aiding and abetting (Count VIII), and civil conspiracy (Count X).

Along with the complaint, the plaintiffs filed a motion for temporary restraining order and preliminary injunction (ECF No. 2), as well as a motion to expedite discovery (ECF No. 3).[2] A hearing on the motion for temporary restraining order and preliminary injunction was held on January 17, 2013, at which time issues pertaining to personal jurisdiction and choice of law arose. The plaintiffs claimed the court has jurisdiction over the individual defendants under provisions of Maryland's long-arm statute and based upon the conspiracy theory of jurisdiction.[3] The defendants responded that the plaintiffs' allegations are insufficient to satisfy the requirements of Maryland's long-arm statute and due process. With regard to the choice of law question, Defendant Alexander claimed that California, not Delaware, law applied to his EEA despite the contract's Delaware forum selection clause.[4] Because the defendants had not yet been served, the court continued the hearing and ordered that Structural Group take steps to ensure that any information it received from the named individual defendants that the plaintiffs assert is

---

[2] The motion to expedite discovery was granted on March 12, 2013.
[3] Section § 6-103(b)(1) confers personal jurisdiction over a person who "[t]ransacts any business or performs any character of work or service" in the state. Md. Code Ann., Cts. & Jud. Proc. § 6-103(b)(1). Section § 6-103(b)(3) allows a court to exercise jurisdiction over a person who "[c]auses tortious injury" in the state.
[4] The agreement's choice of law clause states: "Except as otherwise provided in Section 10, the validity, interpretation, construction, and performance of this Agreement shall be governed by the laws of the State of Delaware, without regard to its conflict of law principles." ECF No. 2, Ex. 3, at 10.

a trade secret or proprietary information be secured and not utilized or destroyed pending continued hearing. The plaintiffs subsequently filed an amended complaint on January 22, 2013.

On January 24, 2013, the plaintiffs filed a supplemental memorandum of law in support of their motion for temporary restraining order and preliminary injunction in which they argued that, according to Maryland's choice of law rules, Delaware law should be applied to Alexander's EEA. On February 11, 2013, the individual defendants filed a motion to dismiss for lack of jurisdiction and to dismiss Count X (conspiracy) for failure to state a claim (ECF No. 31).[5]

## **ANALYSIS**

A challenge to personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2) "is to be resolved by the judge, with the burden on the plaintiff ultimately to prove grounds for jurisdiction by a preponderance of the evidence." *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003). Where a defendant moves to dismiss for lack of personal jurisdiction based only on the motion, memoranda, and the complaint, the plaintiff need only make a "prima facie showing of a sufficient jurisdictional basis to survive the jurisdictional challenge." *Consulting Engineers Corp. v. Geometric Ltd.*, 561 F.3d 273, 276 (4th Cir. 2009). "[T]he court must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction.'" *Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 62 (4th Cir. 1993) (quoting *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989)).

A federal court sitting in diversity may exercise personal jurisdiction over a non-resident defendant "if (1) an applicable state long-arm statute confers jurisdiction and (2) the assertion of that jurisdiction is consistent with constitutional due process." *Nichols v. G.D. Searle & Co.*,

---

[5] Structural Group filed a notice of joinder in the motion to dismiss Count X (ECF No. 34) on February 22, 2013.

991 F.2d 1195, 1199 (4th Cir. 1993). Maryland courts consistently have held that § 6-103(b)(1) of the state's long-arm statute is coextensive with the scope of jurisdiction permitted by the Fourteenth Amendment due process clause; therefore, the statutory and constitutional inquiries merge. *See Carefirst*, 334 F.3d at 396-97.[6]

"To satisfy the constitutional due process requirement, a defendant must have sufficient 'minimum contacts' with the forum state such that 'the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Consulting Engineers Corp.*, 561 F.3d at 277 (quoting *Int'l Shoe Co. v. Wash.,* 326 U.S. 310, 316 (1945)). "The minimum contacts test requires the plaintiff to show that the defendant 'purposefully directed his activities at the residents of the forum' and that the plaintiff's cause of action 'arise[s] out of' those activities." *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)).

The Fourth Circuit has outlined a three-pronged test for determining whether the exercise of specific jurisdiction comports with due process. Under this test, courts must consider "(1) the extent to which the defendant has purposefully availed itself of the privilege of conducting activities in the state; (2) whether the plaintiffs' claims arise out of those activities directed at the state; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *Carefirst*, 334 F.3d at 397 (internal quotation marks omitted).

The "purposeful availment" prong "articulates the minimum contacts requirement of constitutional due process." *Consulting Engineers Corp.*, 561 F.3d at 278. Courts have considered a range of factors in evaluating whether a defendant has purposely availed himself of

---

[6] Because § 6-103(b)(3) of the long-arm statute has been found to impose restrictions on the assertion of jurisdiction greater than those imposed by the Due Process Clause, *see Zeman v. Lotus Heart, Inc.*, 717 F. Supp. 373, 376 (D. Md. 1989), the plaintiffs' failure to satisfy the test for specific jurisdiction under the Due Process Clause would doom their efforts to satisfy § 6-103(b)(3).

the privilege of conducting business under the laws of the forum state. *Id.* These factors include, but are not limited to:

> whether the defendant maintains offices or agents in the forum state; whether the defendant owns property in the forum state; whether the defendant reached into the forum state to solicit or initiate business; whether the defendant deliberately engaged in significant or long-term business activities in the forum state; whether the parties contractually agreed that the law of the forum state would govern disputes; whether the defendant made in-person contact with the resident of the forum in the forum state regarding the business relationship; the nature, quality and extent of the parties' communications about the business being transacted; and whether the performance of contractual duties was to occur within the forum.

*Id.* (internal citations omitted). Courts should consider prongs two and three of the test for specific jurisdiction only if the plaintiff has satisfied this first prong. *Id.*

Turning to the present case, the contacts the plaintiffs describe do not support the conclusion that the individual defendants purposely availed themselves of the privilege of doing business in Maryland to an extent sufficient to justify personal jurisdiction. An important factor in determining purposeful availment is "whether the defendant initiated the business relationship in some way." *Giannaris v. Cheng*, 219 F. Supp. 2d 687, 692 (D. Md. 2002) (internal quotation marks and citation omitted). Here, the plaintiffs do not allege that the individual defendants initiated the relationship with Structural Group. Instead, they emphasize that the individual defendants "initiated" text messages, emails, and telephone communications to Structural Group Vice President Jay Thomas, who is located in Maryland, during several weeks leading up to their resignations from Fyfe Co./Fibrwrap. Nonetheless, the fact that the individual defendants may have initiated *communications* into Maryland does not suffice to show that they initiated the *relationship* with Structural Group. In addition, although the plaintiffs allege that the individual defendants sent hundreds of texts and emails to Structural Group, the plaintiffs have not provided affidavits regarding the *content* of these texts and emails, except for information about a handful

of emails that appear to involve employment negotiations.[7] (Bandemer Aff., ECF No. 2, Ex. 4, at 4.)

In addition, the plaintiffs have not shown that the individual defendants "deliberately engaged in significant or long-term business activities" in Maryland. Again, the plaintiffs cite electronic and telephone communications lasting a mere two months, the content of which is largely unknown, and do not allege that the defendants will perform their jobs as Structural Group employees in the state of Maryland.[8]

The plaintiffs emphasize that the individual defendants traveled to Maryland for one to two weeks in January 2013 to receive training for their new employment with Structural Group. The physical presence of the defendants in the forum state weighs in favor of finding purposeful availment. *See, e.g. Hirschkop & Grad, P.C. v. Robinson*, 757 F.2d 1499, 1503 (4th Cir. 1985) (exercising jurisdiction over defendants who traveled to the forum state to discuss the retainer agreements and fees at issue in the suit). Nonetheless, this single in-person meeting is insufficient to establish purposeful availment, particularly where there is no evidence that the individual defendants initiated the relationship with Structural Group, there is little information regarding the nature and quality of the individual defendants' communications into Maryland, and the travel occurred after the principal part of the alleged tortious conduct was complete.[9] The

---

[7] While the issue of who initiated the relationship is not itself dispositive of purposeful availment, s*ee Christian Sci. Bd. of Dirs. of First Church of Christ, Scientist v. Nolan*, 259 F.3d 209, 216 (4th Cir. 2001), the plaintiffs have failed to provide other evidence sufficient to satisfy the purposeful availment prong.

[8] The court also notes that the parties did not contractually agree that the law of the forum state would govern disputes.

[9] The plaintiffs also emphasize that the individual defendants traveled to Maryland while employed with Fyfe Co./Fibrwrap. Even assuming these contacts constitute purposeful availment, the plaintiffs have not shown that the contacts "form the basis of the suit." *See Consulting Eng'rs Corp.*, 561 F.3d at 278-79 (describing the "arising out of" prong of the test for specific jurisdiction). As a result, such contacts are insufficient to justify personal jurisdiction in accordance with the requirements of due process and § 6-103(b)(1) of Maryland's long-arm statute. In addition, since the defendants appear to have acted solely as representatives of Fyfe Co./Fibrwrap when they traveled to Maryland while employed with the plaintiffs, the fiduciary shield doctrine restricts the assertion of jurisdiction over the individual defendants under § 6-103(b)(3). *See Zeman*, 717 F. Supp. at 375 (noting that "when a corporate employee has no direct interest in the business that generates his contacts with a state, other than the

court cannot conclude, therefore, that the plaintiffs have satisfied the test for specific jurisdiction.[10]

Finally, because the plaintiffs fail to state a claim for conspiracy, the court lacks jurisdiction over the individual defendants under a conspiracy theory of jurisdiction. Under this theory, when:

> (1) two or more individuals conspire to do something
> (2) that they could reasonably expect to lead to consequences in a particular forum, if
> (3) one co-conspirator commits overt acts in furtherance of the conspiracy, and
> (4) those acts are of a type which, if committed by a non-resident, would subject the non-resident to personal jurisdiction under the long-arm statute of the forum state, then those overt acts are attributable to the other co-conspirators, who thus become subject to personal jurisdiction in the forum, even if they have no direct contacts with the forum.

*Mackey v. Compass Mktg., Inc.*, 391 Md. 117, 892 A.2d 479, 486 (2006) (quoting *Cawley v. Bloch*, 544 F. Supp. 133, 135 (D. Md. 1982)). A court may exercise jurisdiction over nonresidents involved in a conspiracy when a co-conspirator performs jurisdictionally sufficient acts in furtherance of the conspiracy. *Id.* at 487.

Before the court can engage in such a jurisdictional analysis, however, the plaintiffs must state a prima facie claim of civil conspiracy. *See id.* at 485, 487. In Maryland, a civil conspiracy is "a combination of two or more persons by an agreement or understanding to accomplish an unlawful act or to use unlawful means to accomplish an act not in itself illegal, with the further requirement that the act or means employed must result in damages to the plaintiff." *Hill v. Brush Engineered Materials, Inc.*, 383 F. Supp. 2d 814, 821 (D. Md. 2005) (quoting *BEP, Inc. v. Atkinson*, 174 F. Supp. 2d 400, 408 (D. Md. 2001)). The Fourth Circuit has emphasized that the

---

remote interest derived from serving his employer, the employee may not be subjected to jurisdiction in that state based on those contacts").

[10] The plaintiffs also point to the transfer to Maryland of electronic storage devices allegedly containing confidential information in support of their claim that the court has jurisdiction. Because this transfer was done by counsel after the lawsuit was initiated, however, this argument is unavailing.

agreement must be clear: "[i]ndependent acts of two wrongdoers do not make a conspiracy." *Murdaugh Volkswagen, Inc. v. First Nat. Bank of South Carolina*, 639 F.2d 1073, 1076 (4th Cir. 1981). Furthermore, the plaintiff must show that the alleged co-conspirators had knowledge of the unlawful conspiracy. *See Cavalier Mobile Homes, Inc. v. Liberty Homes, Inc.*, 53 Md. App. 379, 454 A.2d 367, 386 (Md. App. 1983). To do this, the plaintiff must establish "a unity of purpose or a common design and understanding, or a meeting of the minds in an unlawful arrangement." *Id.* (quoting *American Tobacco Co. v. United States,* 328 U.S. 781, 810 (1946)). Here, the plaintiffs do not allege that the individual defendants had any communications, much less an agreement or understanding, with Structural Group as to the key elements of the alleged conspiracy. The only alleged communications between Structural Group and the individual defendants relate to employment terms such as benefits and offer letters, not to trade secrets, competition with the plaintiffs, or destruction of the plaintiffs' business records. Because the plaintiffs have not provided any evidence establishing a conspiratorial meeting of the minds between the individual defendants and Structural Group, the court declines to apply the conspiracy theory to exercise personal jurisdiction over them.

      A separate Order follows.

<u>May 30, 2013</u>                                              <u>/s/                       </u>
Date                                                                 Catherine C. Blake
                                                                      United States District Judge