**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

FYFE CO., LLC, et al.                          *
                                               *
                                               *
        v.                                     *          Civil No. CCB-13-176
                                               *
                                               *
STRUCTURAL GROUP, LLC, et al.                  *
                                               *
                                ********

## MEMORANDUM

        Plaintiffs Fyfe Co., LLC, Fibrwrap Construction Services, Inc., and Fibrwrap

Construction Services USA, Inc. brought this action against defendant Structural Group, LLC

and individual defendants Jason Alexander, Mark Geraghty, Shaun Loeding, and Anna

Pridmore.  The plaintiffs assert various breach of contract and tort claims against Structural and

the individual defendants relating to their resignation from Fyfe and related companies to begin

working for Structural.  On May 30, 2013, this court granted the individual defendants' motion

to dismiss the amended complaint for lack of personal jurisdiction and for failure to state a claim

as to the civil conspiracy count.  (*See* Memorandum Opinion Granting Motion to Dismiss (May

30, 2013), ECF No. 57.)  The court granted the plaintiffs leave to amend their complaint, and the

plaintiffs subsequently filed a second amended complaint.

        Now pending are the individual defendants' second motion to dismiss (ECF No. 71), in

which Structural joins as to the motion to dismiss the civil conspiracy count (ECF No. 73), and

Structural and the individual defendants' joint motion to dismiss (ECF No. 116) several

additional counts.  The parties have fully briefed the issues, and no oral argument is necessary.

*See* Local R. 105.6.  For the following reasons, the motions to dismiss will be denied.

1

**BACKGROUND**

Fyfe manufactures construction strengthening system products, including Fiber Reinforced Polymer ("FRP") systems, used for strengthening, repair, and restoration of masonry, concrete, steel, and wooden structures.  Fibrwrap Construction Services and Fibrwrap Construction Services USA specialize in concrete repairs as well as installation and construction of FRP composite materials.  All three companies are organized under Delaware law and headquartered in Missouri.  Structural is a Maryland corporation engaged in specialty construction, repair, and maintenance services.  In November 2011, Fyfe and Structural entered into a private label agreement ("PLA").  Pursuant to the PLA, Structural agreed to exclusively purchase Fyfe's products, Fyfe granted Structural a license to market Fyfe's products under Structural's name, and Structural agreed not to compete against Fyfe.

Alexander, Geraghty, and Pridmore are all California residents, and Loeding is a New York resident.  The individual defendants worked for Fyfe or its parent companies until December 2012 when they resigned to accept new positions at Structural.  As part of their employment agreements, each of the individual defendants agreed not to use Fyfe or its parent companies' confidential information and trade secrets for his or her own personal benefit or that of a third party.  In addition, Alexander signed an Executive Employment Agreement ("EEA"), which, among other things, prohibited him for a period of two years from engaging in business that competed against Fyfe and from soliciting Fyfe's employees to leave their employment. Neither the old positions with Fyfe and its parent companies nor the new positions with Structural were based in Maryland.

On January 16, 2013, the plaintiffs filed the first complaint in this case.  After the complaint was amended, the individual defendants moved to dismiss the complaint for lack of

personal jurisdiction.  On April 30, 2013, this court granted the individual defendants' motion to

dismiss for two primary reasons.  First, the plaintiffs did not show that the individual defendants

purposefully availed themselves of the privilege of conducting activities in Maryland.  The

amended complaint was bereft of allegations that the individual defendants initiated the business

relationship with Structural or that the individual defendants were engaged in long-term business

activities in Maryland.  And although the plaintiffs alleged the individual defendants traveled to

Maryland in January 2013, the court concluded this single in-person visit was not a sufficient

basis for asserting jurisdiction over them. Second, the plaintiffs could not invoke the conspiracy

theory of jurisdiction because their allegations did not show a meeting of the minds among the

defendants to misappropriate confidential information in order to compete against Fyfe.

On July 16, 2013, the court granted the plaintiffs leave to amend the complaint, and the

plaintiffs filed a second amended complaint on August 5, 2013.  The second amended complaint

offers a more complete picture of the series of events giving rise to the plaintiffs' claims.  First, it

alleges that Alexander approached Jay Thomas, a Structural executive, in August 2012 on a

fishing trip, and there he raised the prospect of Alexander, Geraghty, and Pridmore leaving Fyfe

to join Structural.  (Second Am. Compl. ¶ 48, ECF No. 67.)   Following this conversation,

Alexander traveled to Maryland in September 2012 to meet with Structural's management,

including CEO Peter Emmons, to discuss further the possibility of the individual defendants

joining Structural.  (*Id.* ¶ 49.)  Although Alexander claims he was invited by Structural to

Maryland, Emmons maintains that Alexander proposed the Maryland meeting.  According to

Emmons, Alexander told Thomas that he would be in the Maryland area and wanted to meet

with Structural representatives while he was there.  (Emmons Dep. 42:13–17, ECF No. 75-2.)  At

this meeting, Alexander identified Loeding as another individual who was interested in leaving

Fyfe for a position at Structural.  (Alexander Dep. 114:25–115:25, ECF No. 75-1.)[1]  Then in

October 2012, all the individual defendants traveled to Maryland for employment discussions

with Structural.  (Second Am. Compl. ¶ 51.)  By this point, Structural was aware of Alexander's

EEA, including its non-compete and non-solicitation provisions, as well as the confidentiality

agreements binding the other individual defendants.  (*Id.*)

The second amended complaint also restates the allegations of a conspiracy among the

individual defendants and Structural to steal Fyfe's confidential and trade secret information and

compete against Fyfe.  (*Id.* ¶ 52.)  After the October 2012 Maryland meeting, the individual

defendants allegedly acted in furtherance of the conspiracy when they copied numerous files to

portable storage devices and concealed their actions by deleting files and running file cleaning

software.  (*Id.* ¶¶ 54–68.)  Structural also allegedly acted in furtherance of the conspiracy when it

purchased $2.1 million of Fyfe product, a sum which exceeded its total purchases for 2012 to

that point and varied from its standard ordering practice.  (*Id.* ¶ 53.)

After resigning their positions with Fyfe, the individual defendants traveled to Maryland

for two weeks of training with Structural in January 2013.  According to the second amended

complaint, during this trip, the individual defendants accessed Fyfe's confidential and trade

secret information and transferred this information to their Structural computers.  (*Id.* ¶ 69.)  In

some instances, the storage devices were shared—one individual defendant used the storage

device to copy Fyfe's files before the individual defendants resigned, and another individual

defendant used the device to upload the files to his or her Structural computer.  (*Id.*)

On August 28, 2013, the individual defendants filed a motion to dismiss the second

amended complaint for lack of personal jurisdiction and the civil conspiracy count for failure to

---

[1] Around this time, Alexander allegedly encouraged his fellow defendants as well as others at
Fyfe to leave their jobs at Fyfe to join Structural.  (Second Am. Compl. ¶ 50.)

state a claim.  And on May 16, 2013, the defendants filed an additional motion to dismiss the

unfair business practices count, the aiding and abetting count, the civil conspiracy count, and the

injunctive relief count.

## I.    PERSONAL JURISDICTION OVER INDIVIDUAL DEFENDANTS

### A.    Standard of Review

Under Rule 12(b)(2), the plaintiff bears the burden of proving the existence of personal

jurisdiction by a preponderance of the evidence.  *Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 60

(4th Cir. 1993).  If a court chooses to decide the issue of personal jurisdiction before trial—as the

court will do again in this case—it may either hold a separate evidentiary hearing, or it may

decide the issue on the basis of allegations in the complaint, affidavits, and other discovery

materials.  *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir.

2003).  If the court chooses not to hold a hearing, the party asserting personal jurisdiction "need

prove only a prima facie case of personal jurisdiction."  *Mylan*, 2 F.3d at 60.  Additionally, "the

court must construe all relevant pleading allegations in the light most favorable to the plaintiff,

assume credibility, and draw the most favorable inferences for the existence of jurisdiction."

*Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989).

The party asserting jurisdiction must satisfy two conditions for personal jurisdiction over

a nonresident individual to exist: "(1) the exercise of jurisdiction must be authorized under the

state's long-arm statute; and (2) the exercise of jurisdiction must comport with the due process

requirements of the Fourteenth Amendment."  *Carefirst*, 334 F.3d at 396.  As to the first

condition, this court is bound by the Maryland Court of Appeals' interpretation of the Maryland

long-arm statute.  *Id.*  Maryland courts consistently have held that § 6-103(b)(1) of the state's

long-arm statute, which authorizes courts to exercise personal jurisdiction over a person who

"transacts any business" in Maryland, is coextensive with limits imposed by the due process

clause; therefore, the statutory and constitutional inquiries merge.  *See id.* at 396–97; *Craig v.*

*Gen. Fin. Corp. of Ill.*, 504 F. Supp. 1033, 1038 (D. Md. 1980).[2]

And with respect to the constitutional analysis, the standard for personal jurisdiction

varies depending on whether the defendant's contacts with the forum state are connected to the

lawsuit.  *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 711–12 (4th Cir. 2002).

Specific jurisdiction may exist where the defendant's contacts also form the basis for the suit.  *Id.*

For specific jurisdiction, courts must consider "(1) the extent to which the defendant has

purposefully availed itself of the privilege of conducting activities in the state; (2) whether the

plaintiffs' claims arise out of those activities directed at the state; and (3) whether the exercise of

personal jurisdiction would be constitutionally reasonable."  *Carefirst*, 334 F.3d at 397 (internal

quotation marks omitted).  If the plaintiff cannot satisfy the first prong, there is no need to

consider prongs two and three.  *See Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273,

278 (4th Cir. 2009).  The specific jurisdiction analysis considers the quality rather than the

quantity of contacts, so "[e]ven a single contact may be sufficient to create jurisdiction when the

cause of action arises out of that single contact, provided that the principle of fair play and

substantial justice is not thereby offended."  *Carefirst*, 334 F.3d at 397 (internal quotation marks

and citations omitted).  If, on the other hand, the defendant's contacts with the forum state are

unrelated to the lawsuit, then the court must consider whether general jurisdiction exists.

General jurisdiction imposes a higher bar than specific jurisdiction because it requires the

---

[2] Section 6-103(b)(3), on the other hand, which authorizes jurisdiction over individuals who cause tortious injury in Maryland by an act committed in Maryland, imposes greater restrictions than those imposed by the due process clause. *Zeman v. Lotus Heart, Inc.*, 717 F. Supp. 373, 375-76 (D. Md. 1989).

defendant to maintain "continuous and systematic" contacts with the forum state.  *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415–16 (1984).

### B.      Analysis

No party has suggested that the individual defendants had "continuous and systematic" contacts with Maryland, so the court's analysis focuses on whether the plaintiffs have demonstrated grounds for specific jurisdiction.  The plaintiffs argue that personal jurisdiction exists under §§ 6-103(b)(1) and (b)(3) of the Maryland long-arm statute.  Because § 6-103(b)(1) is coextensive with limits of the due process clause, the court's analysis merges the statutory and constitutional inquiries.[3]

In the specific jurisdiction three-part test, the purposeful availment prong "articulates the minimum contacts requirement of constitutional due process."  *See Consulting Eng'rs*, 561 F.3d at 278.  Courts have identified several nonexclusive factors in considering whether a defendant has purposefully availed itself of the privilege of conducting activities in a forum, including:

> whether the defendant maintains offices or agents in the forum state; whether the defendant owns property in the forum state; whether the defendant reached into the forum state to solicit or initiate business; whether the defendant deliberately engaged in significant or long-term business activities in the forum state; whether the parties contractually agreed that the law of the forum state would govern disputes; whether the defendant made in-person contact with the resident of the forum in the forum state regarding the business relationship; the nature, quality and extent of the parties' communications about the business being transacted; and whether the performance of contractual duties was to occur within the forum.

*Id.* (internal citations omitted).

The court previously concluded that the plaintiffs' allegations failed to demonstrate purposeful availment, but the new allegations in the second amended complaint and evidence

---

[3] Because § 6-103(b)(3) imposes greater restrictions than those imposed by the due process clause, the plaintiffs' argument that subsection § 6-103(b)(3) applies will fail if they cannot meet the due process requirements.

from the discovery materials compel the opposite conclusion.  Among the factors considered in the purposeful availment analysis, one of the most important is "whether the defendant initiated the business relationship in some way."  *See Giannaris v. Cheng*, 219 F. Supp. 2d 687, 692 (D. Md. 2002) (quoting *Nueva Eng'g, Inc. v. Accurate Electronics, Inc.*, 628 F. Supp. 953, 955 (D. Md. 1986)).  This is true even if a defendant's agent rather than the defendant himself takes the initial action, provided that the defendant later ratifies the agent's conduct.  *See Mitrano v. Hawes*, 377 F.3d 402, 407 (4th Cir. 2004).

Here, the second amended complaint alleges that Alexander initiated the business relationship with Structural on behalf of himself and the other individual defendants.  Alexander approached Thomas during the fishing trip in Florida and said that he, Geraghty, and Pridmore were interested in working for Structural.  (Alexander Dep. 109:6–11; Thomas Dep. 37:5–7, ECF No. 74.)  Moreover, although the individual defendants characterize this interaction as a casual conversation between friends, there is evidence to show it was deliberately planned to initiate employment discussions.  Alexander spoke to Geraghty, who was also on the boat trip in Florida, and the two agreed it would be best for Alexander to approach Thomas alone about the prospect of the individual defendants joining Structural.  (Alexander Dep. 96:17–97:18.)  Additionally, there is evidence to support a finding that Alexander, not Structural, initiated the formal employment discussions by telling Structural he would be in the area and would like to meet while he was there to discuss employment with Structural.  (Emmons Dep. 42:13–17.)  Finally, the plaintiffs have alleged that both Structural and the individual defendants viewed Alexander as the leader of the individual defendants and that he identified the other individual defendants for Structural as others who were interested in leaving Fyfe to join Structural.  (Thomas Dep. 61:1–13.)

The individual defendants urge the court to discount the allegation that Alexander initiated the business relationship because the initial conversation occurred in Florida. According to the individual defendants, Alexander's initiation of the relationship in Florida loses significance because it did not require Alexander to reach into Maryland.  Moreover, the individual defendants maintain that Alexander's first trip to Maryland in September 2012 was at Structural's behest.  The individual defendants also point to the limited in-person contacts with Maryland after this first meeting, including that none of the positions they interviewed for and accepted were based in Maryland.  Even if the argument regarding the initial meeting's location has merit, it does not change the outcome of this case.  At this juncture, the court must construe all jurisdictional allegations and evidence in the light most favorable for the existence of jurisdiction.  *See Combs*, 886 F.2d at 676.  Despite the evidence supporting the individual defendants' version of events, the plaintiffs have presented contrary evidence, including that Alexander not only initiated the employment discussion in Florida, but that he also volunteered to travel to Maryland to meet with Structural in September 2012.  Accordingly, this factor supports a finding of purposeful availment by the individual defendants.[4]

Further, the new allegations of in-person contacts by all the individual defendants when they traveled to Maryland together in 2012 support a finding of purposeful availment.  *See Hirschkop & Grad, P.C. v. Robinson*, 757 F.2d 1499, 1503 (4th Cir. 1985).  After Alexander traveled to Maryland in September, he and the other individual defendants traveled to Maryland in October to continue the employment discussions.  The October 2012 trip by all the individual

---

[4] Moreover, the issue of who initiated the business relationship and where that first contact occurred, while important, is not a talisman in the personal jurisdiction analysis.  *See Burger King Corp. v. Ruzewicz*, 471 U.S. 462, 466 (1985) (finding personal jurisdiction over defendant existed in Florida despite initial contact occurring in Michigan).

defendants is significant in one other respect: it ratifies Alexander's initiation of employment discussions on behalf of the other individual defendants. *See Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.*, 290 F.3d 42, 55–56 (1st Cir. 2002) ("Whether or not an agent is initially authorized to act on behalf of a principal, the agent's actions may be attributed to the principal, for purposes of personal jurisdiction, if the principal later ratifies the agent's conduct.") *cited with approval in Mitrano*, 377 F.3d at 407.

Finally, the new allegations that the individual defendants accessed Fyfe's confidential information and transferred it to their Structural computers during their January 2013 trip to Maryland demonstrates that the alleged tortious activity continued throughout the period during which they were traveling to and from Maryland.[5]

These new allegations, coupled with the allegations of communications into Maryland throughout the employment negotiation process, are sufficient to establish that the individual defendants purposefully availed themselves of the privilege of conducting activities in Maryland.

The second prong of the constitutional analysis is also satisfied in this case. The question here is whether "the litigation results from alleged injuries that 'arise out of or relate to'" the defendant's activities purposefully directed at the forum state. *See Burger King*, 471 U.S. at 472 (quoting *Helicopteros*, 466 U.S. at 414). The plaintiffs' breach of contract, fiduciary duty, and

---

[5] The parties agree that only acts taken by the individual defendant prior to the filing of the complaint count for the jurisdictional analysis. *See, e.g.*, *Noonan v. Winston Co.*, 135 F.3d 85, 94–95 (1st Cir. 1998) (holding that post-complaint contacts are irrelevant for the jurisdictional analysis). The parties disagree, however, about how to draw the line. The individual defendants contend that any events occurring on or after the date the complaint was filed, January 16, 2013, should not be considered for jurisdictional purposes. The plaintiffs counter that any acts taken up until the exact time on the day the complaint was filed must be considered. Because the plaintiffs have presented evidence showing the individual defendants accessed and transferred Fyfe's confidential files before the time the complaint was filed on January 16 and because of the court's obligation to construe facts in favor of the existence of jurisdiction, the actions alleged by the plaintiffs to have occurred on January 16 before the time the complaint was filed will be considered for the purpose of determining the existence of personal jurisdiction.

loyalty claims all relate to the individual defendants' alleged solicitation of employment from Structural, portions of which occurred in Maryland. Additionally, the plaintiffs' claims against all the individual defendants relating to misappropriation of its trade secrets and improper disclosure of its confidential information relate to the individual defendants' alleged transfer and use of that information during their January 2013 trip to Maryland.

And as to the third prong of the specific jurisdiction analysis, exercising personal jurisdiction over the individual defendants in this case would be constitutionally reasonable. This prong "ensures that litigation is not so gravely difficult and inconvenient as to place the defendant at a severe disadvantage in comparison to his opponent." *CFA Inst. v. Inst. of Chartered Fin. Analysts of India*, 551 F.3d 285, 296 (4th Cir. 2009). The relevant factors to this inquiry include "(1) the burden on the defendant of litigating in the forum; (2) the interest of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the shared interest of the states in obtaining efficient resolution of disputes; and (5) the interests of the states in furthering substantive social policies." *Consulting Eng'rs*, 561 F.3d at 279. The mere fact that the individual defendants are residents of California and New York does not compel a finding of constitutional unreasonableness. *See Christian Sci. Bd. of Dirs. of first Church of Christ, Scientist v. Nolan*, 259 F.3d 209, 218 (4th Cir. 2001). By bringing this suit in Maryland, the plaintiffs ease the burden on the individual defendants' co-defendant and employer, Structural, and the individual defendants' past contacts with Maryland demonstrate that this is as convenient a forum as any besides their home states. Relatedly, instituting this lawsuit in a forum relatively convenient to all of the defendants promotes judicial efficiency. Furthermore, Maryland has an interest in deterring its corporate residents from

violating its trade secret protection laws.  Accordingly, the court finds that the exercise of

personal jurisdiction over the individual defendants would be constitutionally reasonable.

Therefore, the court concludes that the assertion of jurisdiction over the individual

defendants comports with due process principles, and the individual defendants' motion to

dismiss for lack of personal jurisdiction will be denied.

## II.   MOTIONS TO DISMISS FOR FAILURE TO STATE A CLAIM

### A.   Standard of Review

When ruling on a motion brought under Rule 12(b)(6), the court must "accept the well-

pled allegations of the complaint as true," and "construe the facts and reasonable inferences

derived therefrom in the light most favorable to the plaintiff."  *Ibarra v. United States*, 120 F.3d

472, 474 (4th Cir. 1997).  "Even though the requirements for pleading a proper complaint are

substantially aimed at assuring that the defendant be given adequate notice of the nature of a

claim being made against him, they also provide criteria for defining issues for trial and for early

disposition of inappropriate complaints."  *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir.

2009).  "The mere recital of elements of a cause of action, supported only by conclusory

statements, is not sufficient to survive a motion made pursuant to Rule 12(b)(6)."  *Walters v.

McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009)).  To survive a motion to dismiss, the factual allegations of a complaint "must be enough

to raise a right to relief above the speculative level . . . on the assumption that all the allegations

in the complaint are true (even if doubtful in fact)."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

555 (2007) (internal citations and alterations omitted).  "To satisfy this standard, a plaintiff need

not 'forecast' evidence sufficient to prove the elements of the claim . . . .  However, the

complaint must allege sufficient facts to establish those elements."  *Walters*, 684 F.3d at 439

(internal citations and quotation marks omitted).  "Thus, while a plaintiff does not need to demonstrate in a complaint that the right to relief is 'probable,' the complaint must advance the plaintiff's claim 'across the line from conceivable to plausible.'"  *Id.* (quoting *Twombly*, 550 U.S. at 570).  In deciding whether to grant a motion to dismiss, the court may also consider documents attached to the complaint as well as documents attached to the motion to dismiss, provided that they are "integral to the complaint and authentic."  *See Sec'y for State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007).

> **B.    Civil Conspiracy**

In both motions to dismiss, the defendants argue that the civil conspiracy claim must be dismissed.  "In Maryland, a civil conspiracy is a combination of two or more persons by an agreement or understanding to accomplish an unlawful act or to use unlawful means to accomplish an act not in itself illegal, with the further requirement that the act or means employed must result in damages to the plaintiff."  *Hill v. Brush Eng'red Materials, Inc.*, 383 F. Supp. 2d 814, 821 (D. Md. 2005) (internal quotation marks and citations omitted).  Moreover, the agreement must be clear because "[i]ndependent acts of wrongdoers do not make a conspiracy."  *See Murdaugh Volkswagen, Inc. v. First Nat. Bank of S.C.*, 639 F.2d 1073, 1076 (4th Cir. 1981).  Although "[a] conspiracy may also be inferred from the things actually done," courts must prevent plaintiffs who rely entirely on circumstantial evidence from using the guise of circumstantial evidence to advance "unfounded speculation."  *See id.* at 1075 (internal quotation marks and citations omitted).  The plaintiff also must show that the co-conspirators had knowledge of the conspiracy.  *See Cavalier Mobile Homes, Inc. v. Liberty Homes, Inc.*, 454 A.2d 367, 372 (Md. App. 1983).

Here, it is a close question whether the second amended complaint cures the shortcomings of the civil conspiracy claim in the first amended complaint that this court previously dismissed.  Because it is not necessary to reach the conspiracy theory in order to determine whether personal jurisdiction exists, and because it does not affect the scope of discovery and is not an independent basis for recovery, *see Lloyd v. Gen. Motors Corp.*, 916 A.2d 257, 284 (Md. 2007), there is no need to determine at this stage whether conspiracy has been adequately pled.

### C.      Unfair Business Practices

Defendants further argue that the plaintiffs' claim for unfair business practices under California's Unfair Competition Law (UCL) must be dismissed.  The UCL "prohibits unfair competition, including unlawful, unfair, and fraudulent business acts."  *Korea Supply Co. v. Lockheed Martin Corp.*, 63 P.3d 937, 943 (Cal. 2003) (citing Cal. Bus. & Prof. Code § 17200). Thus, plaintiffs may proceed under the UCL using three possible theories.  First, the unlawful theory borrows violations of other laws and creates a cause of action for any business practice that violates those laws.  *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 973 P.2d 527, 539–40 (Cal. 1999).  The second theory allows a plaintiff to bring a cause of action for allegedly "unfair" business activities.  If a plaintiff is a competitor of the defendant, the standard for unfairness must be "tethered to some legislatively declared policy or proof of some actual or threatened impact on competition."  *Id.* at 544.  Finally, the fraudulent theory requires a plaintiff to show that "reasonable members of the public are likely to be deceived" by the business act at issue.  *See Rubio v. Capital One Bank*, 613 F.3d 1195, 1204 (9th Cir. 2010) (internal alterations, citations, and quotation marks omitted).  Although the scope of the UCL is broad, its remedies

are limited.  "Prevailing plaintiffs are generally limited to injunctive relief and restitution," and

damages cannot be recovered.  *Korea*, 63 P.3d at 943 (quoting *Cel-Tech*, 973 P.2d at 539).

In Count VII of the second amended complaint, the plaintiffs specifically refer only to the

defendants' alleged misappropriation of its trade secret information as conduct constituting an

unfair business practice.  The defendants argue, and the plaintiffs concede, that an unfair

competition claim based solely on misappropriation of trade secret information is preempted by

the California Uniform Trade Secrets Act (CUTSA).[6]  *See AccuImage Diagnostics Corp. v.*

*Terarecon, Inc.*, 260 F. Supp. 2d 941, 954 (N.D. Cal. 2003) (holding that CUTSA "occupies the

field in California"); *see also K.C. Multimedia, Inc. v. Bank of Am. Tech. & Operations, Inc.*, 90

Cal. Rptr. 3d 247, 263 (Cal. App. 2009).  Accordingly, to the extent the plaintiffs' unfair

business practice claim relies on allegations that the defendants misappropriated its trade secrets

and nothing else, the claim is preempted.

In its opposition to the motion to dismiss, however, the plaintiffs identify additional

examples of unfair business practices that defendants allegedly committed that, while not

expressly described in Count VII, are described in the fact section of the complaint and

incorporated by reference into Count VII.  (*See* Second Am. Compl. ¶ 128.)  It is simply not

necessary at this time to decide what alleged conduct, if any, will survive preemption by

CUTSA.  This issue is better dealt with at summary judgment.

### D.    Aiding and Abetting

Defendants next urge the court to dismiss Fyfe's aiding and abetting claim from the

second amended complaint on the grounds that it cannot be independently pled.  "Maryland has

expressly recognized aider and abettor tort liability."  *Alleco Inc. v. Harry & Jeanette Weinberg*

---

[6] The plaintiffs allege a violation of CUTSA in Count Three.

*Found, Inc.*, 665 A.2d 1038, 1049 (Md. 1995).  For aider and abettor liability to exist, there must be a "direct perpetrator of the tort."  *Id.* at 1050 (quoting *Duke v. Feldman*, 226 A.2d 345, 347 (Md. 1967)).  "Thus, civil aider and abettor liability, somewhat like civil conspiracy, requires that there exist underlying tortious activity in order for the alleged aider and abettor to be held liable."  *Id.*

Here, defendants have not moved to dismiss the underlying tort claims, so there is underlying tortious activity supporting the aiding and abetting claim.  It is therefore not necessary to resolve the proper pleading issue at this time.  Even if the count were dismissed, Fyfe could pursue an aiding and abetting theory to hold the defendants liable for the underlying torts.

### E.     Injunctive Relief

Finally, defendants argue that Fyfe's claim for injunctive relief should be dismissed because an injunction is a remedy and not an independent cause of action.  *See Orteck Int'l Inc. v. Transpacific Tire Wheel, Inc.*, 704 F. Supp. 2d 499, 521 (D. Md. 2010) (holding that an injunction is a remedy and not an independent cause of action); *Fare Deals Ltd. v. World Choice Travel.Com, Inc.*, 180 F. Supp. 2d 678, 682 (D. Md. 2001) ("[A] request for injunctive relief does not constitute an independent cause of action; rather, the injunction is merely the remedy sought for the legal wrongs alleged in the . . . substantive counts.").  Again, while the defendants are correct that it is a remedy rather than an independent cause of action, there is no need to address this on a motion to dismiss.

### CONCLUSION

For the reasons stated above, the motion to dismiss for lack of personal jurisdiction will be denied, and the motion to dismiss the civil conspiracy count, the unfair business practices

count, the aiding and abetting count, and the injunctive relief count for failure to state a claim

will be denied without prejudice.  A separate order follows.


<u>August 11, 2014</u>                                           <u>            /s/            </u>
          Date                                                 Catherine C. Blake
                                                    United States District Judge